3-99-0395

February 13, 2001

                         No. 3--99--0395

(Consolidated with No. 3--99--0396)

_________________________________________________________________

    IN THE

                   APPELLATE COURT OF ILLINOIS

                         THIRD DISTRICT

                           A.D., 2001

THE PEOPLE OF THE STATE         )  Appeal from the Circuit Court

OF ILLINOIS,                    )  of the 21st Judicial Circuit,

       )  Kankakee County, Illinois

Plaintiff-Appellee,       )

                                )  Nos. 98--CF--678 & 98--CF--315 

v.                         ) 

  )

JOSE MENDEZ,                    )  Honorable

  )  Daniel W. Gould,

Defendant-Appellant.       )  Judge Presiding

________________________________________________________________

  PRESIDING JUSTICE HOMER delivered the opinion of the court: ________________________________________________________________

On August 21, 1998, the defendant, Jose Mendez, pled guilty to aggravated discharge of a firearm (720 ILCS 5/24--1.2(a)(2) (West 1998)) in case No. 98--CF--315.  Pursuant to a fully negotiated agreement with the State, the 17-year-old defendant was sentenced to 24 months' probation and 45 weekends in the county jail.  Two months later, he was charged with attempted murder and aggravated discharge of a firearm in case No.98--CF--678.  As a consequence of these charges, the State filed a petition to revoke probation in No. 98--CF--315.  

The causes proceeded to a joint jury trial and probation revocation hearing.  A jury found the defendant guilty of aggravated discharge of a firearm and acquitted him of the attempted murder charge.  The court contemporaneously found that the defendant had violated his probation.  The defendant was subsequently sentenced to 20 years' imprisonment in No. 98--CF--678, and he was resentenced to a concurrent 15-year prison term in No. 98--CF--315.  In this appeal, the defendant contends that (1) he was deprived of his right to due process by the court's use of closed circuit television at his arraignment and upon the return of the jury's verdict; (2) he was denied a fair trial by the prosecutor's comments during closing argument; and (3) he was denied effective assistance of counsel because his attorney failed to request an instruction limiting the jury's use of evidence of the defendant's gang affiliation.  Based on these issues and the cumulative effect of the claimed errors, the defendant requests that both cases be reversed and remanded for further proceedings.  We affirm.

FACTS

The record shows that the defendant made his first appearance in case No. 98--CF--678 without counsel on October 19, 1998.  At that time, a copy of the information charging aggravated discharge of a firearm was served on him, and counsel was appointed.  A superseding indictment was filed on October 23, 1998, adding charges of attempted murder.  On November 5, 1998, the defendant appeared on closed circuit television for his arraignment.  Counsel entered the defendant's plea of not guilty and waived a formal reading of the indictment.  The defendant then asked if his attorney was going to talk to him.  When counsel said he had just received the file and police reports, the defendant responded, "All right.  This is bullshit, man."  

Prior to trial, the defendant moved to bar evidence of his gang affiliation.  This motion was denied.

At trial, 13-year-old L.M. testified that she was standing outside her home on Poplar Street in Kankakee, Illinois, on the afternoon of October 16, 1998.  She was talking to her brother, 17-year-old Miguel, when she observed two young men approach the house.  L.M. recognized one of the men from the neighborhood as Breck Brookshaw.  The other, a Hispanic, she did not recognize.  As L.M. watched, Brookshaw handed a gun to the Hispanic.  When they reached the middle of the street in front of the house, the Hispanic yelled, "Harrison Gent killer" at Miguel.  Miguel yelled back, "King killer."  The Hispanic then pulled out the handgun and fired at Miguel.  Miguel ran into the house and came back out with his friend, Anthony Doss, a Maniac Latin Disciple.  L.M. said the Hispanic fired the gun at Miguel and Doss, then he ran down an alley with Miguel and Doss in pursuit.  She heard three more gunshots.  

A short while later, the police arrived at L.M.'s house to investigate the shooting.  Two squad cars also pulled up.  L.M. said she identified Brookshaw in the first squad car and the Hispanic shooter in the second.  The prosecutor asked if L.M. saw the shooter in the courtroom.  She said she did not.  L.M. said that Miguel was deceased at the time of the trial from causes unrelated to the shooting.

Anthony Doss testified that he was talking to his girlfriend inside the house, when Miguel came in and said that Latin Kings were outside.  Doss said that neither the Harrison Gents nor the Maniac Latin Disciples got along with the Latin Kings.  Doss went outside with Miguel and saw "the Mexican guy" in the street pointing a handgun at them.  After a brief exchange of words, the man fired once or twice.  Doss and Miguel ran back inside and then came back out.  The shooter ran down an alley.  When he saw Doss and Miguel in pursuit, he turned and fired two more rounds at them.  Doss and Miguel turned back and phoned the police.  Doss subsequently identified the shooter when the police brought him to the scene in a squad car.  He denied seeing the shooter in the courtroom.

Breck Brookshaw testified that he was a Vice Lord and a friend of the defendant.  At the time of the offense, the Vice Lords and Latin Kings were "at war" with the Harrison Gents.  He said the defendant told him to hold a black .380 "nation" pistol when they left defendant's house on October 16, 1998.  As they approached Poplar Street, the defendant asked for the gun and Brookshaw passed it to him.  The defendant exchanged verbal gang insults from the street with Miguel, who was standing on his front porch.  Then, the defendant fired at Miguel.  Brookshaw took off running.  Brookshaw heard two more shots and met up with the defendant a block and a half away.  Brookshaw said the defendant "unjammed" the gun.  The defendant hid it behind a friend's house, and Brookshaw picked it up.  A short time later, they saw the police and began running.  Brookshaw tossed the gun in some weeds before they were apprehended.  Brookshaw identified the gun in court as the one used in the shooting.  Brookshaw subsequently pled guilty to his part in the offense and received an eight-year prison sentence with "boot camp" recommended in exchange for his testimony.

Police witnesses testified that they recovered a black .380 handgun in the alley near where they apprehended the defendant and Brookshaw.  The police returned the young men to the scene, where Doss and L.M. identified the defendant as the shooter.  Expert testimony established that a spent shell casing recovered from the street outside L.M.'s house had been fired from the gun recovered from the alley.  The defendant's fingerprint was found on the magazine inside the gun.

After the State rested, the defense rested without presenting evidence.  Following closing arguments, the defendant was returned to the jail, from where he viewed the return of the verdict via closed circuit television.  The jury found the defendant guilty of aggravated discharge of a firearm, but not guilty of attempted murder.  After the jurors were polled, the court entered a finding that defendant was in violation of his probation.

The defendant was sentenced, as aforesaid, and he appeals. 

CLOSED CIRCUIT TELEVISION PROCEEDINGS

The defendant first argues that his constitutional right to be present in person at every critical stage of his trial was violated by the court's use of closed circuit television during the defendant's arraignment and upon the return of the jury's verdict.  In the alternative, he contends that the court erred by not complying with section 106D--1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/106D--1 (West 1998)).  

It is well settled that a defendant in a felony case has a right to be present at his arraignment and when the jury returns its verdict.  
People v. Lindsey
, 309 Ill. App. 3d 1031, 723 N.E.2d 841 (2000), 
pet. for leave to appeal allowed
 No. 89138; 
People v. Nelson
, 18 Ill. 2d 313, 164 N.E.2d 16 (1960).  However, the right to be present may be waived.  
Lindsey
, 309 Ill. App. 3d 1031, 723 N.E.2d 841; 
People v. Nettles
, 107 Ill. App. 2d 143, 246 N.E.2d 29 (1969).  Where a defendant appears by closed circuit television without objection, he is deemed to have consented to the procedure and thereby waives the issue on review unless plain error is shown.  
Lindsey
, 309 Ill. App. 3d 1031, 723 N.E.2d 841.

A procedural defect is plain error if the evidence of guilt was closely balanced or if the defendant was deprived of a substantial right.  
People v. Keene
, 169 Ill. 2d 1, 660 N.E.2d 901 (1995).  A substantial right has been denied if the error affected the proceedings to such a degree that we cannot confidently state that the defendant's trial was fundamentally fair.  
Keene
, 169 Ill. 2d 1, 660 N.E.2d 901.  In other words, this court will act on error that is of such gravity that it threatens the very integrity of the judicial process.  
People v. Blue
, 189 Ill. 2d 99, 724 N.E.2d 920 (2000).  

A defendant's constitutional right to appear in person is not a substantial right in itself.  
People v. Bean
, 137 Ill. 2d 65, 560 N.E.2d 258 (1990).  Rather, it is a means of securing substantial due process rights that may be affected by the proceeding.  
Bean
, 137 Ill. 2d 65, 560 N.E.2d 258 (1990).  A defendant is constitutionally guaranteed the right to be present whenever his presence has a reasonably substantial relation to the fulness of his opportunity to defend against the charge.  
People v. Lofton
, 194 Ill. 2d 40, 740 N.E.2d 782 (2000).  Thus, at proceedings implicating the ultimate decision of guilt or innocence, a defendant's appearance solely by closed circuit television may be considered plain error, regardless of the strength of the State's evidence.  See 
People v. Guttendorf
, 309 Ill. App. 3d 1044, 723 N.E.2d 838 (2000). 

In this case, the defendant did not object to the use of closed circuit television procedure either at his arraignment or upon the return of the jury's verdict.  Although he complained of his attorney's failure to interview him prior to the arraignment, he gave no indication that he wished to appear before the court in person.  

Further, the record does not support the defendant's claim that the use of the closed circuit procedure was plain error.  The defendant does not argue that the evidence of guilt was closely balanced.  There is no indication that the defendant did not understand the charges he faced.  While youthful, the defendant was not unfamiliar with the criminal justice system and had pled guilty to another aggravated discharge offense within a few months prior to the Poplar Street shooting.  At the arraignment, counsel merely entered a not-guilty plea to the new charges and waived a formal reading of the indictment.  Under the circumstances, it is difficult to see how the closed circuit procedure could have prejudiced the defendant or impaired any substantial right.

Nor did the video procedure upon the return of the jury's verdicts result in plain error.  The jury was polled, and every one of the jurors unequivocally stated that the verdicts as read reflected their votes.  At one point, the court stumbled on a juror's number and name, but the juror gave no indication that his vote was not properly recorded.  Based on our careful review of the record, we conclude that any benefit of the defendant's personal presence at this stage of the proceedings was negligible as well.  See 
Lofton
, 194 Ill.2d at 67, 740 N.E.2d at ___.

We also reject the defendant's argument that the trial court committed reversible error by failing to comply with the statute requiring it to promulgate local rules for the use of closed circuit television.  See 725 ILCS 5/106D--1 (West 1998).  As aforesaid, the defendant did not preserve the issue by objecting in the trial court.  The evidence was not closely balanced; and, without any basis upon which to find that the fairness of proceedings to arraign the defendant and to accept the jury's verdict was impaired, the trial court's rule-making oversight was not plain error.  See 
Lindsey
, 309 Ill. App. 3d 1031, 723 N.E.2d 841.

PROSECUTOR'S CLOSING ARGUMENT

Next, the defendant contends that several comments in the prosecutor's rebuttal argument were improper and individually or cumulatively deprived the defendant of a fair trial.

It is well settled that the prosecutor has wide latitude in making closing remarks.  
People v. Barkauskas
, 147 Ill. App. 3d 360, 497 N.E.2d 1183 (1986).  In rebuttal, the prosecutor is permitted to respond to comments made by defense counsel which clearly invite a response.  
People v. Kliner
, 185 Ill. 2d 81, 705 N.E.2d 850 (1998).  The prosecutor's argument must be examined in its entirety and the complained-of comments placed in their proper context.  
People v. Morgan
, 142 Ill. 2d 410, 568 N.E.2d 755 (1991).  Improper remarks will not merit reversal unless they result in substantial prejudice to the defendant.  
People v. Thompkins
, 121 Ill. 2d 401, 521 N.E.2d 38 (1988).  Such remarks must constitute a material factor in the defendant's conviction without which the jury might have reached a different result.  
People v. Lyles
, 106 Ill. 2d 373, 478 N.E.2d 291 (1985).  Further, improper comment by counsel may be cured by providing proper instructions of law.  
People v. Hobley
, 159 Ill. 2d 272, 637 N.E.2d 992 (1994).

To preserve an issue based on improper closing argument, the defendant must make a timely objection at trial and include the issue in his posttrial motion.  
People v. Enoch
, 122 Ill. 2d 176, 522 N.E.2d 1124 (1988).  A general reference to closing arguments in a posttrial motion is insufficient to preserve an issue with respect to specific remarks.  
People v. Henderson
, 142 Ill. 2d 258, 568 N.E.2d 1234 (1990).  Errors not properly preserved will not be reviewed under the plain error doctrine unless the evidence was closely balanced or the alleged error was of such gravity as to deny the defendant a fair trial.  
People v. Hill
, 226 Ill. App. 3d 670, 589 N.E.2d 1087 (1992).

In this case, the defendant waived any objection to comments concerning the eyewitnesses' reluctance to identify the defendant in court by failing to make a contemporaneous objection or to specify the remarks in his posttrial motion.  We nonetheless have analyzed each remark under the plain error doctrine.

In rebuttal, the prosecutor opined that the witnesses were too scared to identify the defendant in open court and that such fear was common at trials involving gang violence.  These comments were not based on any evidence at trial.  However, they were responsive to defense counsel's argument stressing that the witnesses did not identify the defendant in court; and, the trial judge properly instructed the jury to disregard any statements made in closing argument that were not based on the evidence. Illinois Pattern Jury Instructions, Criminal, No. 1.03 (3d ed. 1992) (hereinafter IPI Criminal 3d).  Therefore, even assuming that the prosecutor's comments were improper, they clearly were not plain error.

Defense counsel interjected an objection at a later point, when the prosecutor argued along the same lines and stated that the witnesses' failure to identify the defendant in court was "not significant."  The objection was overruled.  Resolution of conflicts in the evidence, believability of witnesses and the weight to be assigned to evidence are all matters within the province of the jury.  The jury in this case was properly instructed as much (IPI Criminal 3d Nos. 1.02, 3.11).  Thus, any error in the prosecutor's comments on the "significance" of the eyewitnesses' in-court nonidentification of the defendant was cured and did not constitute a material factor in his conviction. 

More troublesome were two remarks which arguably overstated the defendant's role within his gang.  In response to defense counsel's argument that Brookshaw "sold" his testimony for a light sentence, the prosecutor stated, 

"MR. ASTRELLA [Assistant State's Attorney]:  That's part of what we have to do.  We climb the ladder to get the big fish.  Jose is a big fish, the big gang member.  We had to deal with the lower level guys to get the big guy.  That's part of our job.

* * *

MR. ASTRELLA:  We might not be able to solve all the gang problems, convicting this Defendant would be a small step in that direction."

In response to defense counsel's objection to the "big fish" remark, the court admonished the jury that it should disregard argument not supported by the evidence and cautioned the prosecutor to "proceed with caution."  The prosecutor then tempered his comments by explaining the plea bargaining process used in Brookshaw's case.  Defense counsel's subsequent objection to the "small step" remark was overruled.  

While the prosecutor's closing remarks certainly overstepped the bounds of proper prosecutorial argument in this case by appealing to the jurors' fears and prejudices against gangs, we cannot say that the remarks constituted plain error.  Where, as here, the evidence of the defendant's guilt of the offense of which he stands convicted was so substantial that the remarks, neither individually nor cumulatively, could not have influenced the jury's decision, improper closing arguments are not reversible error.  See 
Henderson
, 142 Ill. 2d at 323, 568 N.E.2d at 1265.  Therefore, the defendant is not entitled to a new trial based on improper closing arguments.

INEFFECTIVE ASSISTANCE OF COUNSEL

The defendant next argues that defense counsel provided ineffective assistance by failing to request a limiting instruction on gang evidence.  He contends that any reasonably competent attorney would have requested that the jury receive both an oral instruction at the time the gang affiliation evidence is presented at trial and a written jury instruction limiting the use of such other "conduct" at the close of trial.  See IPI Criminal 3d No. 3.14, Committee Note, at 16 (Supp. 1996); 
People v. Matthews
, 299 Ill. App. 3d 914, 702 N.E.2d 291 (1998).  

To succeed on his claim of ineffective assistance of counsel, the defendant must show that (1) the attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for the attorney's unprofessional errors, the result of the proceedings would have been different.  
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  In this case, after unsuccessfully moving to preclude evidence of the defendant's gang affiliation 
in
 
limine
, defense counsel noted during his opening statement that the State's witnesses were members of a rival gang and would lie to implicate the defendant for a crime he did not commit.  Counsel's decision not to request an instruction limiting the use of gang affiliation thereafter may have been a tactical decision to avoid confusing the jury or to avoid focusing the jury's attention on the gang evidence.  In any event, even if an instruction had been given during trial and at its conclusion, there is no reasonable probability that the jury would have found the defendant not guilty of aggravated discharge of a firearm.  As noted above, the evidence of the defendant's guilt of that crime was overwhelming.  Therefore, the defendant's claim of ineffective assistance of counsel must fail.

CUMULATIVE ERROR

Finally, defendant argues that his conviction of aggravated discharge of a firearm in No. 98--CF--678 and the revocation of his probation in No. 98--CF--315 should be reversed based on the cumulative effect of all of the errors claimed on appeal.  We disagree.

Where errors claimed on appeal which are not individually considered sufficiently egregious to entitle the defendant to a new trial nevertheless create a pervasive pattern of unfair prejudice to defendant's case, a new trial may be granted on the ground of cumulative error.  
Blue
, 189 Ill.2d 99, 724 N.E.2d 920.  Most of the defendant's claims in this case do not present erroneous rulings by the trial judge.  Nor are we able to say on this record that the few errors occurring at trial were sufficiently pervasive to deny the defendant a fair trial.  Accordingly, the defendant is not entitled to a new trial.

CONCLUSION

For the reasons stated, the judgment of the circuit court of Kankakee County is affirmed.

Affirmed. 

HOLDRIDGE and SLATER, JJ., concurred.