(No. 89138)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. WILLIE E. LINDSEY, Appellant.

*Opinion filed June 20, 2002.*

Robert Agostinelli, Deputy Defender, and Kenneth D. Brown and Carrie B. Marche, Assistant Defenders, of the Office of the State Appellate Defender, of Ottawa, for appellant.

James E. Ryan, Attorney General, of Springfield, and Michael Kick, State's Attorney, of Kankakee (Joel D. Bertocchi, Solicitor General, and William L. Browers and Russell K. Benton, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

Defendant, Willie Lindsey, was charged by indictment with one count of unlawful possession of a controlled substance (cocaine) with the intent to deliver (720 ILCS 570/401(c)(2) (West 1996)) and one count of unlawful possession of cannabis with the intent to deliver (720 ILCS 550/5(d) (West 1996)). Following a bench trial in the circuit court of Kankakee County, defendant was found guilty of the charged offenses and later sentenced to concurrent terms of imprisonment for periods of 10 years and 4 years, respectively.

Direct appeal was taken to the appellate court. There defendant argued, for the first time, that his appearances in the trial court via closed-circuit television at the time of arraignment and jury waiver violated his constitutional and statutory right to be present. The appellate court rejected defendant's arguments and affirmed defendant's convictions and sentences. 309 Ill. App. 3d 1031.

We allowed defendant's petition for leave to appeal. 177 Ill. 2d R. 315. For reasons that follow, we affirm the judgment of the appellate court.

## BACKGROUND

On October 8, 1997, at about 9 p.m., Kankakee police officers executed a search warrant at the home of defendant's girlfriend, Nikeya Hairston. In the course of the search, police recovered drugs and drug paraphernalia. Both Hairston and defendant were present during the search and both were arrested.

The record shows that, on October 9, 1997, an information containing the charges against defendant was filed with the court and a copy furnished to defendant. A hearing was held, at which time defendant was advised of the minimum and maximum penalties, the right to a jury trial and the right to counsel. The court, at defendant's request, appointed the public defender's office to represent defendant. It is unclear from the record whether defendant appeared in person or by closed-circuit television for this hearing.

On October 17, 1997, the grand jury returned a bill of indictment against defendant and on October 23, 1997, defendant was arraigned. At the arraignment, defendant was represented by counsel, who was present in the courtroom. Defendant, however, appeared via closed-circuit television from the jail. Defense counsel acknowledged receipt of the indictment, waived its formal reading, requested statutory discovery, and demanded a jury trial.

Immediately following arraignment, the court held a hearing on defendant's bond-reduction motion. Defendant testified via closed-circuit television in support of the motion. After hearing the testimony, the court denied the motion and defendant remained in custody.

The record shows that, between arraignment and trial, the circuit court conducted eight pretrial hearings regarding defendant's case. Defendant was not physically present in the courtroom at any of these hearings. Instead, defendant "appeared" at the hearings via closed-circuit television from a room within the county jail. Defense counsel, however, appeared in the courtroom. Defendant and counsel had no opportunity for immediate communication with each other, unless it was done through the closed-circuit system, which meant that the judge and other attorneys could hear their conversation. To speak privately with defendant, defense counsel had to leave the courtroom and contact defendant by telephone. The record does not disclose whether separate, secure telephone lines were set aside for this purpose.

One of the pretrial hearings occurred on February 4, 1998. Although the case had been set for trial on that date, the State moved for a continuance because certain witnesses were unavailable. After the court granted the continuance, defendant, who was present via closed-circuit television, asked to speak to his attorney. The case was recessed so that defense counsel could telephone defendant. When the case was recalled, the court was advised by counsel that defendant wanted to waive his right to a jury trial. The court, speaking to defendant across the closed-circuit system, admonished defendant regarding his right to a jury trial. Finding that defendant understood his right to trial by jury and was voluntarily giving up that right, the court accepted defendant's jury waiver. A jury waiver form was then signed by defendant at the jail and later transmitted to the court.

After the jury waiver was accepted, the court inquired about possible stipulations. Defense counsel conferred publicly with defendant across the closed-circuit system. The following colloquy took place:

"[DEFENSE COUNSEL]: Judge I think—Mr. Lindsey the Judge is asking you about the lab.

DEFENDANT LINDSEY: Yeah.

[DEFENSE COUNSEL]: Since our defense does not involve saying that this is not—that the materials were found [sic] were not—I believe it's alleged to be cocaine, but rather they were not our materials, do you have any objection to stipulating that what the substance of the police [sic] found was in fact cocaine?

DEFENDANT LINDSEY: Well, your Honor, I have a—

THE COURT: Do you understand your lawyer's—

DEFENDANT LINDSEY: That report right here.

[DEFENSE COUNSEL]: Right, but it makes a difference in scheduling if they need to bring the lab personnel down here to testify that they tested the materials and it tested positive for the presence of cocaine. If we agree that testing was done and it returned as positive for cocaine, then they don't need to bring in those lab personnel down here.

DEFENDANT LINDSEY: Right. Well according to these documents they tested it already.

[DEFENSE COUNSEL]: Right, but what I'm asking you is if you will agree and will enter into what is called a stipulation for the Court and for the record we say, Judge, we don't dispute that they tested it and it tested positive for cocaine. In other words, rather than having the lab person who tested it come down here and testify as to the test performed and the results of those tests that it was positive for cocaine, that would just be introduced to the Court by way of agreement.

THE COURT: It shortens up the trial if you're not fighting about whether or not it was cocaine Mr. Lindsey. Do you understand that?

DEFENDANT LINDSEY: Yes."

Defendant agreed to stipulate to the lab evidence and the trial date was continued to February 9, 1998. On that

date, the State requested another continuance because fingerprint evidence was not yet available. Before granting the motion, the court discussed the possibility of proceeding to the trial, with the fingerprint evidence to be presented at a later date. This colloquy followed:

"[DEFENSE COUNSEL]: Mr. Lindsey, do you understand what the judge is asking about? It would be a bifurcated proceeding. We'd start today. They would put on any evidence except evidence relating to fingerprints that might or might not have been found on these baggies. Do you understand?

DEFENDANT *** LINDSEY: Yes, sir.

[DEFENSE COUNSEL]: So we'd be starting without the results of whether there is any fingerprints on there. Do you have any objection to that?

THE COURT: You want to talk to him privately?

[DEFENSE COUNSEL]: Sure, Judge.

THE COURT: Why don't you go to the phone, Mr. Lindsey. You and your lawyer can confer privately on that.

DEFENDANT *** LINDSEY: Okay."

Counsel then left the courtroom to telephone defendant. When court reconvened, defense counsel informed the court that defendant would not proceed to trial without knowing all of the evidence against him. The court granted the continuance over defendant's objection and a new trial date was set.

Defendant's bench trial commenced on April 10, 1998. Defendant appeared in court with counsel for his trial. The State presented evidence linking defendant to the drugs and drug paraphernalia recovered from Hairston's home. After hearing all of the evidence, the circuit court found defendant guilty of possession of a controlled substance (cocaine) with intent to deliver and possession of cannabis with the intent to deliver. Defendant does not question the sufficiency of the evidence presented against him.

Defendant appealed and, for the first time, challenged his closed-circuit television appearances at arraignment

and jury waiver. Defendant argued that arraignment and jury waiver are "critical stages" of the criminal proceedings against him and that, in the absence of an express waiver, he had a constitutional right to be physically present at these hearings.

Defendant also maintained that his statutory right to be present in the trial court at the time of his arraignment and jury waiver was violated. Section 113—1 of the Code of Criminal Procedure of 1963 (Code) provides:

> "Before any person is tried for the commission of an offense he shall be called into *open court*, informed of the charge against him, and called upon to plead thereto. If the defendant so requests the formal charge shall be read to him before he is required to plead." (Emphasis added.) 725 ILCS 5/113—1 (West 1998).

Similarly, section 103—6 of the Code of Criminal Procedure provides:

> "Every person accused of an offense shall have the right to a trial by jury unless (i) understandingly waived by defendant in *open court* \*\*\*." (Emphasis added.) 725 ILCS 5/103—6 (West 1998).

Defendant argued that his appearances via closed-circuit television at the time of his arraignment and jury waiver did not satisfy the statutory requirement that he be present in "open court" at these proceedings.

Finally, defendant maintained that the circuit court had no authority to hold any pretrial proceedings via closed-circuit television because the court had not adopted rules regarding the use of closed-circuit television, as required by section 106D—1 of the Code. Section 106D—1 provides:

> "When a defendant's personal appearance is not required by the Constitution of the United States or Illinois Constitution, the court may allow the defendant to personally appear at any pre-trial or post-trial proceeding by way of closed circuit television when:
>
> > (a) the court has authorized the use of closed circuit television and has by rule or order set out the type of

proceedings that may be conducted by closed circuit television; and

 (b) the defendant is incarcerated; and

 (c) the Director of Corrections, sheriff or other authority has certified that facilities are available for this purpose." 725 ILCS 5/106D—1 (West 1998).

The appellate court rejected defendant's claims, finding that the alleged errors were procedurally defaulted because defendant failed to object to his closed-circuit television appearances at the time of the hearings and failed to allege the error in a post-trial motion. After reviewing the claims for plain error, the appellate court concluded that the procedural default should not be excused because the evidence was not closely balanced and defendant's constitutional rights were not violated. 309 Ill. App. 3d at 1034-35. Additionally, the appellate court found no statutory violations. The court assumed that the circuit court had complied with its statutory duty to promulgate rules concerning the use of closed-circuit television because defendant had not presented any clear evidence to the contrary. 309 Ill. App. 3d at 1036. Accordingly, the appellate court affirmed defendant's convictions and sentences.[1] 309 Ill. App. 3d at 1036.

We granted defendant's petition for leave to appeal. 177 Ill. 2d R. 315.

## ANALYSIS

Before this court, defendant maintains that his closed-circuit television appearance at his arraignment and jury waiver violated his constitutional right to be present in court at every "critical stage" of the proceed-

---

[1]In his direct appeal, defendant also presented an argument concerning his entitlement to a monetary credit for 218 days of presentence custody. The appellate court granted defendant $1,090 credit against his drug assessment fee. The amount of monetary credit is not at issue in the appeal before this court.

ings against him (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8), causing his right to counsel to be impaired. Defendant also maintains that his statutory right to be present in open court at his arraignment (725 ILCS 5/113—1 (West 1998)) and jury waiver hearing (725 ILCS 5/103—6 (West 1998)) was violated because he was not physically present in court for these hearings. Finally, defendant maintains that the trial court was not authorized to conduct hearings via closed-circuit television because the court failed to adopt rules regulating the use of closed-circuit television, as required by state law. 725 ILCS 5/106D—1 (West 1998). Defendant contends that his claims regarding the validity of his arraignment and jury waiver should be reviewed substantively because he never expressly waived the right to be physically present at these hearings. In the alternative, defendant asks that the error be considered as plain error.

The State asks this court to affirm the appellate court's judgment, finding that the errors alleged by defendant have been procedurally defaulted and that the plain error doctrine does not apply. As the State correctly points out, defendant never objected to his appearances via closed-circuit television or requested to be physically present in the courtroom. Further, defendant did not allege this error in his post-trial motion. Thus, it is clear that defendant has failed to properly preserve the alleged errors for review. *People v. Casillas*, 195 Ill. 2d 461, 491 (2000) (to preserve an issue for review a defendant must both object at trial and specifically include the objection in a post-trial motion); *People v. Chapman*, 194 Ill. 2d 186, 225 (2000); *People v. Enoch*, 122 Ill. 2d 176, 186 (1988).

Illinois Supreme Court Rule 615(a) provides that "notice may be taken of '[a]ny error, defect, irregularity, or variance' which affects 'substantial rights' though such was not 'brought to the attention of the trial court.' "

*People v. Keene*, 169 Ill. 2d 1, 16-17 (1995), quoting 134 Ill. 2d R. 615(a). Thus, errors affecting substantial rights, or plain errors, may be reviewed pursuant to Rule 615(a), even when those errors have not been objected to during trial or presented in a post-trial motion. *In re R.A.B.*, 197 Ill. 2d 358, 362-63 (2001). "[T]o determine whether a purported error is 'plain' requires a substantive look at it. But if, in the end, the error is found not to rise to the level of a plain error as contemplated by Rule 615(a), the procedural default must be honored." *Keene*, 169 Ill. 2d at 17.

In criminal cases, the plain error rule may be invoked in two limited circumstances: "(1) where the evidence is closely balanced; or (2) when the errors are of such magnitude that defendant was denied a fair and impartial trial and remedying the error is necessary to preserve the integrity of the judicial process." *People v. Nieves*, 192 Ill. 2d 487, 502-03 (2000), citing *People v. Vargas*, 174 Ill. 2d 355, 363 (1996). In the case at bar, defendant does not contest the sufficiency of the evidence or claim that the evidence of his guilt was closely balanced. Rather, defendant contends that he was denied due process because he was not physically present in the courtroom during his arraignment and jury waiver. Thus, our review is restricted to considering whether the second limited circumstance justifying application of the plain error doctrine is present. Furthermore, we shall consider only whether defendant's appearance via closed-circuit television at the arraignment and jury waiver proceedings constitutes error since defendant argues that it is at these critical stages that his right to be present attached.

### A. Constitutional Violation

Defendant's first claim is that his appearance via closed-circuit television for his arraignment and jury waiver violated his federal and state constitutional right to be present at all critical stages of trial. We disagree.

The right to be present is not an express right under the United States Constitution, but is implied, arising from the due process clause of the fourteenth amendment. U.S. Const., amend. XIV, § 1; *Kentucky v. Stincer*, 482 U.S. 730, 745, 96 L. Ed. 2d 631, 647, 107 S. Ct. 2658, 2667 (1987); *United States v. Gagnon*, 470 U.S. 522, 526, 84 L. Ed. 2d 486, 490, 105 S. Ct. 1482, 1484 (1985); *Snyder v. Massachusetts*, 291 U.S. 97, 105-06, 78 L. Ed. 674, 678, 54 S. Ct. 330, 332 (1934). Article I, section 8, of the Illinois Constitution grants criminal defendants the express right "to appear and defend in person and by counsel." Ill. Const. 1970, art. I, § 8. Accordingly, both the federal constitution and our state constitution afford criminal defendants the general right to be present, not only at trial, but at all critical stages of the proceedings, from arraignment to sentencing. *Illinois v. Allen*, 397 U.S. 337, 338, 25 L. Ed. 2d 353, 356, 90 S. Ct. 1057, 1058 (1970); *People v. Bull*, 185 Ill. 2d 179 (1998); *People v. Bean*, 137 Ill. 2d 65, 80-83 (1990); *People v. Martine*, 106 Ill. 2d 429, 439 (1985).

Defendant argues that he had a right to be physically present at his arraignment and jury waiver because they are "critical" stages of the proceedings against him. This court and the United States Supreme Court have long recognized that arraignment is a critical stage of the criminal proceedings. *Powell v. Alabama*, 287 U.S. 45, 57, 77 L. Ed. 158, 164, 53 S. Ct. 55, 59 (1932); *People v. Hessenauer*, 45 Ill. 2d 63, 67-68 (1970). Arraignment is the first step in the criminal prosecution and, as such, "far from a mere formalism." *Kirby v. Illinois*, 406 U.S. 682, 689, 32 L. Ed. 2d 411, 418, 92 S. Ct. 1877, 1882 (1972). Due to the significance of arraignment, a defendant's right to counsel attaches at this time. *Brewer v. Williams*, 430 U.S. 387, 398, 51 L. Ed. 2d 424, 436, 97 S. Ct. 1232, 1239 (1977); *Hamilton v. Alabama*, 368 U.S. 52, 7 L. Ed. 2d 114, 82 S. Ct. 157 (1961); *Powell*, 287 U.S. at 57, 77 L. Ed. at 164, 53 S. Ct. at 59-60.

Although this court is unaware of any case which defines a jury waiver as a "critical stage" of the proceedings, it has been recognized that any proceeding where a defendant asserts or waives constitutional rights may be deemed "critical." *People v. Young*, 201 Ill. App. 3d 521, 533 (1990). Moreover, this court held in *People v. Scott*, 186 Ill. 2d 283 (1999), that a written jury waiver is insufficient to prove a valid waiver of the right to trial by jury. We stated,

> "We have never found a valid jury waiver where the defendant was not present in open court when a jury waiver, written or otherwise, was at least discussed." *Scott*, 186 Ill. 2d at 285.

Because we found it necessary in *Scott* for a defendant to acknowledge "in open court" his knowing and understanding waiver of his right to trial by jury, the proceeding is "critical," at least to the extent that defendant's constitutional right to be present attaches.

Finding that arraignment and jury waiver are "critical" stages of trial does not end our inquiry, however. The right to be present, even at a critical stage of the proceedings, is not absolute. See *Allen*, 397 U.S. at 343, 25 L. Ed. 2d at 359, 90 S. Ct. at 1060-61 (defendant may waive the right to be present at trial by consent or, as in that case, by misconduct); *Snyder v. Massachusetts*, 291 U.S. 97, 78 L. Ed. 674, 54 S. Ct. 330 (1934); *United States v. Veatch*, 674 F.2d 1217, 1224-26 (9th Cir. 1981); *Bean*, 137 Ill. 2d at 80. In *Stincer*, the United States Supreme Court explained the scope of a defendant's right of presence under the federal constitution:

> "The Court has assumed that, even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right 'to be present in his own person whenever his presence has a relationship, reasonably substantial, to the fulness of his opportunity to defend against the charge.' [Citation.] Although the Court has emphasized that this privilege of presence is not guaranteed 'when presence would be use-

less, or the benefit but a shadow' [citation], due process clearly requires that a defendant be allowed to be present 'to the extent a fair and just hearing would be thwarted by his absence' [citation]. Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome *if his presence would contribute to the fairness of the procedure.*" (Emphasis added.) *Stincer*, 482 U.S. at 745, 96 L. Ed. 2d at 647, 107 S. Ct. at 2667.

The right to be present, as guaranteed by our state constitution, was defined in *Bean.* In *Bean*, we said:

"[The right to be present] is a lesser right the observance of which is a means to securing the substantial rights of a defendant. Thus a defendant is not denied a constitutional right every time he is not present during his trial, but only when his absence results in a denial of an underlying substantial right, in other words, a constitutional right; and it is only in such a case that plain error is committed. [Citations.] Some of these substantial rights are the right to confront witnesses, the right to present a defense, and the right to an impartial jury." *Bean*, 137 Ill. 2d at 81.

Based on *Stincer* and *Bean*, we conclude that, even where a defendant has the general right to be present because the proceeding is a "critical" stage, a defendant's absence is not a *per se* constitutional violation. Rather, a defendant's absence from such a proceeding will violate his constitutional rights only if the record demonstrates that defendant's absence caused the proceeding to be unfair or if his absence resulted in a denial of an underlying substantial right.[2] As stated in *Bean*, a defendant cannot rely on "broad principles [which are] not adapted to the specifics of this case." *Bean*, 137 Ill. 2d at 84. Rather, "[w]hether the benefit [of defendant's presence] would have been 'but a shadow' because the fairness of

---

[2]In *Baker v. City of Blaine*, 221 F.3d 1108, 1110-11 (9th Cir. 1999), and *Wootton v. Lambert*, No. 01—35511 (9th Cir. 2002) (unpublished opinion), a slightly different approach was taken. The arraignments in those cases were held not to be a "critical stage" under the attendant circumstances.

the trial was not affected by the defendant's absence from a portion of his trial 'must be determined in the light of the whole record.' " *Bean*, 137 Ill. 2d at 84 (quoting *Snyder*, 291 U.S. at 106-07, 115, 78 L. Ed. at 678, 683, 54 S. Ct. at 332, 336, and *Gagnon*, 470 U.S. at 527, 84 L. Ed. 2d at 490-91, 105 S. Ct. at 1484-85).

In the case at bar, defendant "appeared" and was represented by counsel at both the arraignment and jury waiver. He contends, however, that his appearance was defective and his right to counsel impaired because he was not physically present in court, by counsel's side. However, we find that the record does not demonstrate that defendant's physical absence from the courtroom contributed to the unfairness of the proceedings or caused him to be denied any underlying constitutional right.

While defendant was not physically present in the courtroom for his arraignment and jury waiver, neither was he entirely absent from these proceedings. Defendant participated in the proceedings through audio-visual transmission. The record indicates that the closed-circuit system provided defendant with the ability to hear and see the proceedings taking place in the courtroom and, at the same time, allowed the judge and other persons in the courtroom to hear and see defendant. The record demonstrates that defendant was able to interact with the court with relative ease. It also appears from the record that defendant was aware of the nature and significance of the proceedings and the overall solemnity of the proceedings was preserved.

It is true that, at arraignment, counsel waived formal reading of the indictment. However, defendant does not contend that he was unaware of the charges against him and the record shows that defendant had already received a copy of the information at a preliminary hearing and had consulted with counsel prior to arraignment. Fur-

thermore, at the arraignment, counsel simply entered a not-guilty plea and demanded trial. When accepting the plea, the court did not need to assess defendant's demeanor. Defendant's ability to defend against the charges was unaffected by his physical absence from the courtroom during the arraignment.

As for the jury waiver hearing, it was defendant who initiated the proceeding after he had consulted with counsel by telephone. Defendant was then called upon to address the court and state his intention to waive trial by jury. His voluntary and knowing waiver was clearly conveyed. Defendant does not contend otherwise. Nor does defendant demonstrate how his right to a fair and just hearing was thwarted by his absence from the courtroom. Finding no inherent unfairness stemming from the fact that defendant was not physically present in the courtroom when he waived trial by jury, we conclude that defendant was not denied due process simply because he waived his right to a jury trial via closed-circuit television.

Moreover, the record does not establish that defendant's underlying constitutional rights were violated by the fact that he was not physically present at his arraignment and jury waiver. Defendant's sixth amendment right to confront witnesses was not implicated because there were no witnesses to confront at the proceedings. We acknowledge that defendant's absence from the courtroom had some impact on defendant's access to counsel. Because defendant and his attorney appeared at separate locations during the arraignment and jury waiver, defendant's ability to communicate freely with counsel was impaired—communication through the closed-circuit system could not be done privately and, to speak privately, counsel was required to leave the courtroom to contact defendant by telephone. See *People v. Guttendorf*, 309 Ill. App. 3d 1044 (2000) (defendant's

inability to consult freely with counsel contributed to the unconstitutionality of defendant's closed-circuit television appearance when entering a guilty plea). Nevertheless, we cannot say that, in the context of the arraignment and jury waiver involved here, defendant's right to counsel was so impaired by his physical absence from the courtroom that he was denied the effective assistance of counsel. As noted above, at the arraignment, counsel merely entered defendant's not-guilty plea. The fact that defendant was not physically present in the courtroom, by counsel's side, had no prejudicial effect on defendant's plea. We note, too, that prior to waiving trial by jury, defendant had the opportunity to consult privately with counsel. We conclude that the record does not support a finding that, as a result of his physical absence from the courtroom, defendant was denied adequate representation with regard to his arraignment and jury waiver.

In sum, we hold that defendant's appearances via closed-circuit television at arraignment and jury waiver did not render those proceedings unconstitutional. To show a constitutional violation of the right to be present, there must be evidence that defendant's due process rights were violated by his absence from the courtroom, *i.e.*, that defendant's physical absence from the proceedings caused the proceedings to be unfair or that his physical absence from the proceedings resulted in the denial of an underlying constitutional right. There has been no such showing on this record. Consequently, we find no constitutional violation.[3]

We note that our holding today is in line with the

---

[3]It has also been held that, "even improper exclusion of a defendant from a 'critical' portion of the trial does not automatically require reversal, if in the particular case the defendant's absence was harmless beyond a reasonable doubt." *Polizzi v. United States*, 550 F.2d 1133, 1138 (9th Cir. 1976), citing *Rogers v. United States*, 422 U.S. 35, 39-40, 45 L. Ed. 2d 1, 6, 95 S. Ct. 2091, 2095 (1975). We do not consider here whether defendant's appear-

holdings of other state supreme courts which have considered the matter. See *Commonwealth v. Ingram*, 46 S.W.3d 569 (Ky. 2001) (properly functioning video arraignment is the constitutional equivalent of in-court arraignment if the video procedure is properly safeguarded and no specific constitutional right has been violated); *Larose v. Superintendent, Hillsborough County Correction Administration*, 142 N.H. 364, 702 A.2d 326 (1997) (conducting arraignment and bail hearings via teleconferencing system does not violate due process); *State v. Phillips*, 74 Ohio 3d 72, 656 N.E.2d 643 (1995) (arraignment via closed-circuit television is constitutionally adequate when the procedure is functionally equivalent to live, in-person arraignment); *In re Rule 3.160(a), Florida Rules of Criminal Procedure*, 528 So. 2d 1179 (Fla. 1988) (appearance at arraignment by audio-visual device approved because due process does not require the personal presence of a defendant in a courtroom when, through mechanical means, defendant can see and hear the judge and the judge can see and hear the defendant); *Commonwealth v. Terenbieniec*, 268 Pa. Super. 511, 408 A.2d 1120 (1979) (no unconstitutional prejudice inherent in appellant's arraignment via closed-circuit television).

## B. Statutory Violation

We next consider whether defendant's closed-circuit television appearances at arraignment and jury waiver violated defendant's statutory rights. Illinois law provides that "[b]efore any person is tried for the commission of an offense he shall be called into *open court*, informed of the charge against him, and called upon to plead thereto." (Emphasis added.) 725 ILCS 5/113—1 (West 1998). In addition, "[e]very person accused of an offense shall have the right to a trial by jury unless (i) understandingly

---

ance was harmless error because we find no constitutional violation occurred.

waived by defendant in *open court* \*\*\*." (Emphasis added.) 725 ILCS 5/103—6 (West 1998). Defendant argues in favor of a strict construction of the "open court" language contained in these statutes. He contends that the legislature, by requiring the pretrial proceeding to take place in "open court," intended that defendant be physically present in the courtroom and that the presence requirement may not be satisfied by a closed-circuit television appearance. As support, defendant relies on *Valenzuela-Gonzalez v. United States District Court for the District of Arizona*, 915 F.2d 1276 (9th Cir. 1990), in which the court held that Rules 10 and 43 of the Federal Rules of Criminal Procedure provides a defendant with a right of presence that is broader than the constitutional right. Rule 10 provides that "Arraignment shall be conducted in open court," and Rule 43, entitled "Presence of the Defendant," provides that "defendant shall be present at the arraignment." The court held that the plain language of the rules requires a defendant's physical presence at arraignment and that an appearance via closed-circuit television is not an authorized substitute for physical presence. However, the strict construction of the rules by the *Valenzuela-Gonzalez* court was premised on the fact that Congress had not spoken on whether closed-circuit television could satisfy the presence requirement. Absent legislative authority, the *Valenzuela-Gonzalez* court did not feel "free to ignore the clear instructions of Rules 10 and 43." *Valenzuela-Gonzalez*, 915 F.2d at 1281.

In contrast, the Illinois legislature has expressed a willingness to allow closed-circuit television appearances as a substitute for in-court appearances. In section 106D—1(a) of the Code, it states that "[w]hen a defendant's personal appearance is not required by the Constitution of the United States or Illinois Constitution, the court may allow the defendant to personally ap-

pear at any pre-trial or post-trial proceeding by way of closed circuit television when: (a) the court has authorized the use of closed-circuit television and has by rule or order set out the type of proceedings that may be conducted by closed circuit television ***." 725 ILCS 5/106D—1(a) (West 1998). Thus, a strict construction of the "open court" language found in sections 103—6 and 113—1 as excluding closed-circuit television appearances is not warranted. Construing the provisions of sections 103—6 and 113—1 *in pari materia* with section 106D—1, we discern the legislature's intent to interpret the "open court" language broadly to include appearances by closed-circuit television. See *In re Application for Judgment & Sale of Delinquent Properties for the Tax Year 1989*, 167 Ill. 2d 161, 171-72 (1995) (Revenue Act and section 16 are *in pari materia* and may be construed together to determine the intent of the legislature). Consequently, we find that defendant's appearance by closed-circuit television at his arraignment and jury waiver satisfied the statutory requirement that he "be called into open court" for arraignment and waive his right to trial by jury "in open court."

Parenthetically, even if it had been error to conduct defendant's arraignment by closed-circuit television, defendant would not have been able to demonstrate plain error. Section 113—6 of the Code (725 ILCS 5/113—6 (West 1998)) provides that "[n]either a failure to arraign nor an irregularity in the arraignment shall affect the validity of any proceeding in the cause if the defendant pleads to the charge or proceeds to trial without objecting to such failure or irregularity." Thus, any "irregularity" of conducting defendant's arraignment by closed-circuit television would have been waived once defendant proceeded to trial without objection.

C. Circuit Court's Violation of Section 106D—1

As a final argument, defendant contends that the

circuit court of Kankakee County, where the proceedings in this case took place, had no authority to conduct any pretrial or post-trial proceedings by closed-circuit television because the court failed to fulfill its statutory duty to set out, by rule or order, the type of proceedings that could be conducted by closed-circuit television. As noted earlier, section 106D—1(a) of the Code provides that a court "may allow the defendant to personally appear at any pre-trial or post-trial proceeding by way of closed circuit television when *** the court has authorized the use of closed circuit television and has by rule or order set out the type of proceedings that may be conducted by closed circuit television ***." 725 ILCS 5/106D—1(a) (West 1998). The appellate court found that the record failed to disclose whether the circuit court complied with its statutory duty to promulgate rules or orders concerning the use of closed-circuit television. See 309 Ill. App. 3d at 1035. However, defendant asks that this court take judicial notice of the published Uniform Rules of Practice for the Twenty-First Judicial Circuit, which he has appended to his brief on appeal, as evidence that the circuit court failed to fulfill its duty.

We agree that it is appropriate to take judicial notice of the circuit court's published rules. See *Murdy v. Edgar*, 103 Ill. 2d 384, 394 (1984) (courts may take judicial notice of matters which are commonly known). Further, we agree that the rules do not evidence the court's compliance with the statutory directive. The State offers no argument on the subject. Thus, we must assume that defendant is correct and that the circuit court has failed to fulfill its statutory duty to formally authorize the use of closed-circuit television by setting forth rules or orders as to the types of proceedings that may be conducted by closed-circuit television.

We are disturbed by the circuit court's laxity and caution that courts must discharge their responsibility to

promulgate rules as required by section 106D—1 of the Code. Nevertheless, we are constrained by the procedural posture of this case to find that the error does not require reversal. There is no plain error. Defendant was not deprived of a substantial right because of the circuit court's failure to adopt rules.

## CONCLUSION

Under the facts presented, defendant's appearance via closed-circuit television at his arraignment and jury waiver did not violate his federal or state constitutional right to be present or impair his right to be represented by counsel. The record fails to show that defendant's physical absence from the proceedings violated due process or denied him substantial rights. Further, we find that the statutory right to be present in "open court" at arraignment and jury waiver does not afford defendant any broader rights than the federal and state constitutions. For the reasons stated, we affirm the judgment of the appellate court.

*Affirmed.*

JUSTICE FREEMAN, dissenting:

Contrary to legislative mandate, the circuit court of Kankakee County has failed to adopt rules regulating the use of closed-circuit television or setting forth the type of proceeding that may be conducted by closed-circuit television. At issue is whether the circuit-court could require defendant to appear via closed-circuit television at arraignment and at jury waiver, without such rules. The majority holds that defendant's appearances via closed-circuit television at arraignment and at jury waiver did not render those proceedings unconstitutional. Further, the majority holds that the circuit court's failure to adopt rules regulating the use of closed-circuit television at these proceedings does not require reversal. Because such rules are required by our legislature as a safeguard to the defendant's rights, I respectfully dissent.

## BACKGROUND

Issues surrounding the use of closed-circuit television have arisen with some frequency in the Third District of the appellate court. See *People v. Bouie*, 327 Ill. App. 3d 243 (2001); *People v. Caruth*, 322 Ill. App. 3d 226 (2001); *People v. Dixon*, 319 Ill. App. 3d 881 (2001); *People v. Mendez*, 318 Ill. App. 3d 1145 (2001); *People v. Speed*, 318 Ill. App. 3d 910 (2001); *People v. Guttendorf*, 309 Ill. App. 3d 1044 (2000). The circuit courts of the Third District have allowed the use of closed-circuit television at arraignment (*Bouie*, 327 Ill. App. 3d 243; *Caruth*, 322 Ill. App. 3d 226; *Dixon*, 319 Ill. App. 3d 881; *Mendez*, 318 Ill. App. 3d 1145; *Speed*, 318 Ill. App. 3d 910), jury waiver (*Dixon*, 319 Ill. App. 3d 881), guilty plea hearings (*Speed*, 318 Ill. App. 3d 910; *Guttendorf*, 309 Ill. App. 3d 1044), and upon the return of the jury's verdict (*Mendez*, 318 Ill. App. 3d 1145). In each instance, the defendant argued he had the right to be present at every critical stage of the criminal proceedings. In most instances, the defendant also argued that the circuit court erred in failing to promulgate rules governing the use of closed-circuit television. To date, the circuit courts of the Third District have failed to promulgate rules governing the use of closed-circuit television.

In the present case, the circuit court convicted defendant of unlawful possession of a controlled substance with the intent to deliver and unlawful possession of cannabis with the intent to deliver. Defendant appealed, claiming that the court erred in arraigning him and accepting his jury waiver when defendant was present only by closed-circuit television. Defendant also maintained that the court was not authorized to hold pretrial proceedings via closed-circuit television because the court had failed to adopt any rules regulating the type of proceedings to be conducted by closed-circuit television as required by statute. See 725 ILCS 5/106D—1 (West 1998).

The appellate court noted that defendant had waived these issues by failing to object in the circuit court. 309 Ill. App. 3d at 1033. Further, the court determined that it was not appropriate to excuse the waiver because the evidence of guilt was not closely balanced and defendant was not deprived of substantial constitutional rights. 309 Ill. App. 3d at 1034-35. The court also noted that the record did not disclose whether the circuit court had complied with its statutory duty to promulgate rules concerning the use of closed-circuit television at pretrial proceedings. 309 Ill. App. 3d at 1035. In the absence of a complete record, the court assumed that the circuit court had adopted the necessary rules. 309 Ill. App. 3d at 1036. The court affirmed defendant's conviction. 309 Ill. App. 3d at 1036.

This court allowed defendant's petition for leave to appeal to consider the propriety of the use of closed-circuit television at arraignment and jury waiver.

## ANALYSIS

In this court, the State notes that defendant did not object to the appearances via closed-circuit television. Further, defendant did not allege error in his post-trial motion. Accordingly, the State argues that defendant has waived any objection to the use of closed-circuit television. Additionally, the State maintains that any alleged error did not impact a substantial constitutional right. Defendant has not shown that he suffered any prejudice in the use of closed-circuit television. The State concludes that this court should not excuse defendant's waiver by application of the plain error doctrine.

The rule of waiver is, of course, a limitation on the parties and not the courts. *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507, 514 (1994); *People v. Hoskins*, 101 Ill. 2d 209, 219 (1984). In the exercise of its responsibility for a just result and the maintenance of a sound and uniform body of precedent, a reviewing court

may consider issues not properly preserved by the parties. *People v. Wilson*, 155 Ill. 2d 374, 379 (1993), citing *Hux v. Raben*, 38 Ill. 2d 223, 225 (1967). In the present case, I believe this court should excuse defendant's waiver for precisely these two reasons. First, this court may address defendant's arguments on the merits in order to foster uniformity in our jurisprudence. See *People v. Tooles*, 177 Ill. 2d 462, 465 (1997) (addressing substantive arguments where questions regarding the failure to secure a written jury waiver had arisen frequently in appellate court); *People v. Smith*, 106 Ill. 2d 327, 333 (1985) (considering issue of jury waiver on its merits given its importance and the frequency with which it arises); *People v. Rehbein*, 74 Ill. 2d 435 (1978) (addressing issue on the merits because of the importance of the issue and the great number of cases reaching the appellate courts on the issue). Second, the record does not contain either a signed waiver indicating that defendant was voluntarily and understandingly giving up his right to be present in court, or any other indication defendant had been advised he had the right to be present in court and was voluntarily and understandingly giving up that right. It must be remembered that defendant's first appearance was via closed-circuit television.[4] At that time, the court advised defendant of the charges against him, the minimum and maximum penalty, the right to jury trial and the right to counsel. However, the court did not inform defendant that he had a right to be physically present in the courtroom. Each subsequent hearing followed the same format, with defendant appearing via

---

[4]The majority finds it is not clear from the record whether defendant appeared in person at this proceeding or via closed-circuit television. However, in his brief, defendant has informed this court that he appeared via closed-circuit television at all pretrial proceedings in this case. The State has adopted defendant's statement of facts.

closed-circuit television. The record contains neither a hint nor whisper of a caution to defendant that he could object to the format of the hearings. Given these circumstances, and recalling our responsibility for a just result, I believe it appropriate to consider defendant's arguments on the merits. See *Hoskins*, 101 Ill. 2d at 219 (a reviewing court may ignore the waiver rule in order to achieve a just result).

The majority reviews defendant's arguments under the plain error doctrine. See 134 Ill. 2d R. 615(a). Plain error is a limited and narrow exception to the general waiver rule, to be invoked only where the evidence is closely balanced, or the alleged error is so substantial that it deprived the defendant of a fair trial. *People v. Bull*, 185 Ill. 2d 179, 200 (1998). In the present case, the evidence of defendant's guilt is overwhelming. Further, defendant does not contend in this court that the evidence was insufficient to prove his guilt beyond a reasonable doubt. See *People v. Jackson*, 84 Ill. 2d 350, 360 (1981). Consequently, application of the plain error doctrine must rest upon the deprivation of a substantial right.

The majority considers the alleged errors in light of this standard. The majority holds that defendant's appearances via closed-circuit television at arraignment and at jury waiver did not render those proceedings unconstitutional. The majority also holds that defendant was not deprived of a substantial right because of the circuit court's failure to adopt rules governing the use of closed-circuit television.[5]

Our legislature has defined arraignment as "the

---

[5]Having found that defendant's appearance via closed-circuit television at arraignment did not constitute plain error, the majority comments:

"Parenthetically, even if it had been error to conduct defendant's arraignment by closed-circuit television,

formal act of calling the defendant into open court, informing him of the offense with which he is charged, and asking him whether he is guilty or not guilty." 725 ILCS 5/102—4 (West 1998). Our legislature has also provided that "[b]efore any person is tried for the commission of an offense he shall be called into open court, informed of the charge against him, and called upon to plead thereto." 725 ILCS 5/113—1 (West 1998). Thus, our legislature seems to require a defendant's presence in court at arraignment. Likewise, our legislature has provided that every person accused of an offense shall have the right to a trial by jury unless understandingly waived by the defendant in open court. 725 ILCS 5/103—6 (West 1998). Again, our legislature seems to require a defendant's presence in court whenever the defendant waives trial by jury.[6]

This court has heretofore recognized that a defen-

---

defendant would not have been able to demonstrate plain error. Section 113—6 of the Code (725 ILCS 5/113—6 (West 1998)) provides that '[n]either a failure to arraign nor an irregularity in the arraignment shall affect the validity of any proceeding in the cause if the defendant pleads to the charge or proceeds to trial without objecting to such failure or irregularity.' Thus, any 'irregularity' of conducting defendant's arraignment by closed-circuit television would have been waived once defendant proceeded to trial without objection." 201 Ill. 2d at 63.

To the extent that the majority is suggesting that a deprivation of fundamental rights is not plain error if sanctioned by the legislature, I disagree most respectfully but emphatically.

[6]These provisions stand in contrast to section 109—1 of the Code. 725 ILCS 5/109—1 (West 1998). The latter provides:

"Whenever a person arrested either with or without a warrant is required to be taken before a judge, a charge may be filed against such person by way of a two-way closed circuit television system, except that a hearing to deny bail to the defendant may not be conducted by way of closed circuit television." 725 ILCS 5/109—1 (West 1998).

dant's presence in open court is required at a jury waiver. *People v. Scott*, 186 Ill. 2d 283 (1999); *People v. Smith*, 106 Ill. 2d 327 (1985). In *Scott*, 186 Ill. 2d 283, this court considered whether a written waiver alone validly waives a defendant's right to a jury trial. The defendant had executed a written jury waiver in his attorney's office, which stated that the defendant had until the last Thursday of December 1994 to revoke the waiver. Subsequently, the written jury waiver was filed in court outside of the defendant's presence. On the day of trial, in the defendant's presence, defense counsel and the court each indicated that the trial would be a bench trial. The defendant did not object.

Initially, this court noted that section 103—6 provides that a bench trial may be held if the right to trial by jury is understandingly waived by defendant in open court. Thus, a waiver of the right to a jury trial is valid only if made (1) understandingly and (2) in open court. Next, this court noted that it had never found a valid jury waiver where the defendant was not present in open court when a jury waiver, written or otherwise, was at least discussed. Pointing to the statement in the jury waiver regarding revocation, this court stated that the language created the inference that the jury waiver was irrevocable after the last Thursday of December 1994. The defendant's silence in court at the mention of a bench trial may have been due to his belief that it was too late to revoke the jury waiver. This court refused to hold that the defendant's silence constituted acquiescence in the jury waiver. Instead, this court concluded that the defendant did not validly waive his right to a jury trial in open court. Accordingly, this court affirmed the judgment of the appellate court, reversing the judgment of the circuit court, and remanded the cause for a new trial. See also *Smith*, 106 Ill. 2d at 334 (consistent with constitutional jury trial provisions, section 103—6 provides that a jury waiver must be made in open court).

In this case, however, the majority eschews the requirement of physical presence at arraignment and at jury waiver. The majority explains:

"[T]he Illinois legislature has expressed a willingness to allow closed-circuit television appearances as a substitute for in-court appearances. In section 106D—1(a) of the Code, it states that '[w]hen a defendant's personal appearance is not required by the Constitution of the United States or Illinois Constitution, the court may allow the defendant to personally appear at any pre-trial or post-trial proceeding by way of closed circuit television when: (a) the court has authorized the use of closed circuit television and has by rule or order set out the type of proceedings that may be conducted by closed circuit television ***.' [Citation.] Thus, a strict construction of the 'open court' language found in sections 103—6 and 113—1 as excluding closed-circuit television appearances is not warranted. Construing the provisions of sections 103—6 and 113—1 *in pari materia* with section 106D—1, we discern the legislature's intent to interpret the 'open court' language broadly to include appearances by closed-circuit television." 201 Ill. 2d at 62-63.

While it is true that section 106D—1 contemplates the use of closed-circuit television at pretrial proceedings, it is equally true that our legislature has imposed certain requirements on the use of closed-circuit television at pretrial proceedings. Section 106D—1 shows clearly that the legislature intended to protect the rights of the defendant, and placed a charge upon the judiciary to implement rules regulating the use of closed-circuit television. Our legislature's expressed willingness to allow the use of closed-circuit television is, therefore, entirely *contingent* upon the judicial implementation of rules governing the use of closed-circuit television.

In the case at bar, the circuit court did not properly safeguard defendant's rights. In spite of the legislature's command to implement rules securing the rights of this and other defendants, the circuit court failed to adopt any rules regulating the use of closed-circuit television.

As the record clarifies, the circuit court's failure to implement the requisite rules impacted negatively upon defendant's ability to communicate spontaneously and completely with defense counsel. Whenever he needed to communicate with counsel, defendant had to interrupt the court proceedings and ask the court's permission to do so. The court did not have a dedicated telephone line for private communication in the courtroom between defendant and defense counsel. Instead, the court instructed defendant to go to a telephone and await a call from counsel.[7] In one instance, the court told defendant:

"Why don't you go over and wait by the phone. When he gets a break here, he'll give you a call."

Perhaps more egregious were the conversations between defendant and counsel recorded in the transcripts of the court hearings. These conversations allowed all present to hear matters which would have been better discussed with counsel in private. Certainly, the circuit court should not have allowed defendant's appearance via closed-circuit television to substitute for consultation between defendant and his counsel.

The majority recognizes that arraignment and jury waiver are critical stages of the criminal proceedings. However, the majority does little more than the circuit court to safeguard defendant's rights. The majority notes:

"We acknowledge that defendant's absence from the courtroom had some impact on defendant's access to counsel. Because defendant and his attorney appeared at separate locations during the arraignment and jury waiver, defendant's ability to communicate freely with counsel was

---

[7]From my review of the record, I cannot determine what length of time elapsed between each request from defendant to speak with counsel and counsel's telephone call to defendant. For the most part, it is also impossible to ascertain whether defense counsel telephoned defendant from a telephone outside of the courtroom or used a telephone in the courtroom.

impaired—communication through the closed-circuit system could not be done privately and, to speak privately, counsel was required to leave the courtroom to contact defendant by telephone. [Citation.] Nevertheless, we cannot say that, in the context of the arraignment and jury waiver involved here, defendant's right to counsel was so impaired by his physical absence from the courtroom that he was denied the effective assistance of counsel. As noted above, at the arraignment, counsel merely entered defendant's not-guilty plea. The fact that defendant was not physically present in the courtroom, by counsel's side, had no prejudicial effect on defendant's plea. We note, too, that prior to waiving trial by jury, defendant had the opportunity to consult privately with counsel." 201 Ill. 2d at 59-60.

Thus, according to the majority, an arraignment is nothing of substance, at least when the defendant enters a plea of not guilty. The majority gives greater substance to the jury waiver, requiring prior communication between defendant and counsel. The problem, however, is that the majority assumes the telephone conversation between defendant and counsel was private. There is no indication in the record as to where counsel was when he placed the telephone call to defendant. There is also no indication in the record as to where defendant was when he received the telephone call or how many guards were with him. In his brief, defendant informs this court that one of the telephone conversations between defense counsel and defendant occurred over the courtroom telephone.

To be fair, the majority does recognize that the circuit court failed in its duty to implement rules governing the use of closed-circuit television. The majority is "disturbed by the circuit court's laxity and caution[s] that courts must discharge their responsibility to promulgate rules as required by section 106D—1 of the Code." 201 Ill. 2d at 64-65. The majority's concern, however, is of no more substance than that displayed by the courts of the Third District. As I noted above, issues regarding the use of

closed-circuit television have arisen with some frequency in the Third District. The circuit courts of the Twelfth and Twenty-first judicial districts have allowed the use of closed-circuit television at a number of pretrial proceedings, without first implementing rules regulating the use of the system. The appellate court has blinded itself to this practice by refusing to take judicial notice of the rules of the circuit courts. In light of the widespread use of closed-circuit television, our legislature's command that the circuit courts adopt rules governing the use of closed-circuit television, and this court's supervisory authority over all the courts of this state, this court is called upon to do more to protect the rights of the defendants at pretrial proceedings.

The majority states that its holding "is in line with the holdings of other state supreme courts which have considered the matter," citing *Commonwealth v. Ingram*, 46 S.W.3d 569 (Ky. 2001), *Larose v. Hillsborough County Correction Administration*, 142 N.H. 364, 702 A.2d 326 (1997), *State v. Phillips*, 74 Ohio 3d 72, 656 N.E.2d 643 (1995), *In re Rule 3.160(a), Florida Rules of Criminal Procedure*, 528 So. 2d 1179 (Fla. 1988), and *Commonwealth v. Terenbieniec*, 268 Pa. Super. 511, 408 A.2d 1120 (1979). 201 Ill. 2d at 60-61. Some distinguishing factors exist, however, which diminish this claim of support. First, the cases cited by the majority deal exclusively with the use of closed-circuit television at arraignment. An argument may be made that the time requirements for arraignment justify the use of closed-circuit television. See *Larose*, 142 N.H. at 366, 702 A.2d at 328 ("Here, the legislature intended to insure the timely arraignment of a person being held in custody, not to guarantee face-to-face contact with the court"). The majority does not cite to any cases involving jury waiver. Second, the majority fails to review the rules adopted by these jurisdictions, and other jurisdictions which have

experimented with the use of closed-circuit television, to protect the rights of the defendants. My review of case law and statutes enacted by several jurisdictions shows a greater concern for the rights of the defendant than that shown by this court. For example, in *Ingram*, the video arraignment system allowed all participants to see and hear each other simultaneously. Another part of the video arraignment system consisted of television monitors from which any person present in the courtroom could view the arraignment proceeding. Additionally, if the accused was represented by counsel, communication between the two could be achieved through the use of conference room telephones. *Ingram*, 46 S.W.3d at 570. In *Larose*, the court described the arraignment procedure as follows:

> "Pursuant to a temporary order of this court, arraignments and bail hearings in Hillsborough County may be conducted via a teleconference system installed between the superior courthouse, housing in this instance the Nashua District Court, and the Nashua Police Station. Under the temporary procedure, a defendant *and his or her attorney* is able to view the courtroom on a television monitor divided into four sections, each displaying a different person or part of the courtroom. Similarly, the district court judge can view a defendant *and his or her attorney* on one of five monitors mounted around the courtroom." (Emphases added.) *Larose*, 142 N.H. at 365, 702 A.2d at 328.

Thus, it appears that the defendant and counsel were at the same location, and, were presumably able to communicate directly and freely at the arraignment. In *Terenbieniec*, 268 Pa. Super. 511, 408 A.2d 1120, the Pennsylvania Superior Court allowed the use of closed-circuit television at the defendant's arraignment. The Pennsylvania Consolidated Statutes specifically require that:

> "The audio-video communication must operate so that the defendant and the judge can see each other simultaneously and converse with each other. If the defendant has counsel,

the defendant shall be allowed to communicate fully and confidentially with his attorney during the proceeding." 42 Pa. Cons. Stat. § 8703 (2001).

The Alabama Code of Criminal Procedure provides in part:

"The audio-video communication shall enable the judge or magistrate to see and converse simultaneously with the defendant or other person and operate so that the defendant and his or her counsel, if any, can communicate privately, and so that the defendant and his or her counsel are both physically present in the same place during the audio-video communication." Ala. Code § 15—26—1 (2001).

The Kansas Code of Criminal Procedure provides in part:

"The defendant may be accompanied by the defendant's counsel during [audio-video] arraignment. The defendant shall be informed of the defendant's right to be personally present in the courtroom during arraignment." Kan. Stat. Ann. § 22—3205(b) (2000).

The Mississippi Code of Criminal Procedure provides in part:

"When the physical appearance in person in court is required of any person who is represented by counsel and held in a place of custody or confinement ***, upon waiver of any right such person may have to be physically present, such personal appearance may be made by means of closed circuit television from the place of custody or confinement, provided that such television facilities provide two-way audio-visual communication between the court and the place of custody or confinement and that a full record of such proceedings be made by split-screen imaging and recording of the proceedings in the courtroom and the place of confinement or custody in addition to such other record as may be required ***." Miss. Code Ann. § 99—1—23 (Supp. 2001).

The Michigan Code of Criminal Procedure provides in part:

"(1) Unless the defendant requests physical presence before the court, a judge or district court magistrate may conduct initial criminal arraignments and the setting of bail by 2-way closed circuit television communication be-

tween a court facility and a prison, jail, or other place where a person is imprisoned or detained. ***

* * *

(3) Except as otherwise provided by law, the public shall have access to the courtroom, with the ability to view and hear the proceedings." Mich. Comp. Laws § 767.37a (2000).

The Montana Code of Criminal Procedure provides in part:

"(4) Whenever the law requires that a defendant in a misdemeanor or felony case be taken before a court for an arraignment, this requirement may, in the discretion of the court, be satisfied either by the defendant's physical appearance before the court or by two-way electronic audio-video communication. The audio-video communication must operate so that the defendant and the judge can see each other simultaneously and converse with each other, so that the defendant and the defendant's counsel, if any, can communicate privately, and so that the defendant and the defendant's counsel are both physically present in the same place during the two-way electronic audio-video communication." Mont. Code Ann. § 46—12—201 (2000).

The New Mexico Court Rules provide in part:

"H. Audio-visual appearance. The arraignment or first appearance of the defendant before the court may be through the use of a two-way audio-video communication if the following conditions are met:

(1) the defendant and the defendant's counsel are together in one room at the time of the first appearance before the court;

(2) the judge, legal counsel and defendant are able to communicate and see each other through a two-way audio-video system which may also be heard and viewed in the courtroom by members of the public; and

(3) no plea is entered by the court except a plea of not guilty." N.M. Dist. Ct. R. Crim. P. 5—303(H) (2002).

The North Carolina General Statutes provide in part:

"(b) An arraignment in a noncapital case may be conducted by an audio and video transmission between the judge and the defendant in which the parties can see and hear each other. If the defendant has counsel, the defen-

dant shall be allowed to communicate fully and confidentially with his attorney during the proceeding." N.C. Gen. Stat. § 15A—941(b) (2002).

The Oregon Revised Statutes provide in part:

"[A]ppearance by simultaneous television transmission shall not be permitted unless the facilities used enable the defendant to consult privately with defense counsel during the proceedings." Or. Rev. Stat. § 135.030 (2001).

The Tennessee Rules of Criminal Procedure provide that "in the absence of an objection by the defendant" the arraignment may be through the use of an electronic audiovisual device. Tenn. Crim. Proc. R. 43(e) (2002). The Rules of Criminal Procedure for the Superior Court of the State of Delaware provide that "[t]elevision monitors shall be situated in the courtroom and at the place of incarceration so as to provide the public, the court, and the defendant with a view of the proceedings." Del. Super. Ct. Crim. R. 10(b) (2000). Lastly, the district court of the State of Louisiana allows the use of closed-circuit television at arraignment "except when the defense counsel requests the defendant's appearance in open court." La. 22 Dist. Ct. R. XXI (2001).

This review, although not exhaustive, clearly demonstrates that most jurisdictions which allow the use of closed-circuit television have also attempted to safeguard the rights of the accused.

## CONCLUSION

This court and the United States Supreme Court have recognized that arraignment is a critical step in a criminal proceeding. *Kirby v. Illinois*, 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877 (1972); *People v. Hessenauer*, 45 Ill. 2d 63, 67-68 (1970). In *Kirby*, the United States Supreme Court explained:

"The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute,

and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." *Kirby*, 406 U.S. at 689, 32 L. Ed. 2d at 417-18, 92 S. Ct. at 1882.

Because of the critical nature of the arraignment, a defendant is entitled to the assistance of counsel. *Hamilton v. Alabama*, 368 U.S. 52, 7 L. Ed. 2d 114, 82 S. Ct. 157 (1961); *Hessenauer*, 45 Ill. 2d at 68.

Jury waiver is also a critical step in a criminal proceeding. As noted in *People v. Young*, 201 Ill. App. 3d 521, 533 (1990), "a critical stage has been reached whenever constitutional or other rights can be asserted or waived, or where events occur that can prejudice the defendant's subsequent trial." The right of a defendant to a jury trial is guaranteed by the Illinois Constitution (Ill. Const. 1970, art. I, § 8), and the federal Constitution (U.S. Const., amends. VI, XIV). A proceeding at which a defendant waives his right to a jury trial involves the relinquishment of the defendant's constitutional right and is a critical step in the criminal process.

Our legislature has recognized that a defendant has certain rights at criminal proceedings, including pretrial proceedings. In an attempt to safeguard those rights, our legislature has mandated the enactment of rules prior to the use of closed-circuit television at pretrial proceedings. Contrary to this legislative mandate, the courts of the Third District have allowed the use of closed-circuit television systems at pretrial proceedings without first enacting the required rules.

This court acknowledges that the circuit court failed to adopt the rules required by our legislature. This court also acknowledges that arraignment and jury waiver are critical steps in a criminal proceeding. Lastly, this court acknowledges that the closed-circuit television system used at defendant's arraignment and jury waiver im-

pacted negatively on defendant's right to counsel. Contrary to these findings, however, this court upholds the circuit court's use of closed-circuit television at defendant's arraignment and at jury waiver.

This court has a duty to supervise the courts of this state. Where certain rules are required by our legislature, this court should take an active role in ensuring that the rules are adopted. Further, this court has a responsibility for a just result in reviewing a decision of a lower court. In the present case, the court fails in both duties. By affirming defendant's conviction, the court abandons the goal of a just result. Also, the court countenances the circuit court's failure to comply with the legislative mandate. Today's decision provides little incentive for our circuit courts to obey the legislature and defeats the legislature's attempts to safeguard the rights of those accused of crimes. I respectfully dissent.

CHIEF JUSTICE HARRISON and JUSTICE KILBRIDE join in this dissent.