2018 IL App (1st) 160501
No. 1-16-0501
Opinion filed November 13, 2018

Second Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 MC5 0024401 |
| | ) | |
| NANCY LUCAS, | ) | Honorable |
| | ) | Matthew J. Carmody, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Lavin and Pucinski and concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Nancy Lucas was convicted of misdemeanor battery, misdemeanor resisting a peace officer, operating an unsafe vehicle, driving under the influence of alcohol, and negligent driving in Cook County circuit court. She was sentenced to 24 months' conditional discharge. On appeal, Lucas contends that her right to due process was violated because she was absent for a critical stage of the proceedings when, during the bench trial, the judge viewed a video of her traffic stop outside her presence.

¶ 2 We affirm. Lucas affirmatively waived her claim that her due process rights were violated by having acquiesced to the trial court viewing the video in chambers after the court explained to her the parties' stipulation and the courtroom procedure.

¶ 3                                    Background

¶ 4 Before presenting witnesses, the parties stipulated to the authenticity of the video of Lucas's traffic stop captured by Oak Lawn police sergeant Edward Clancy's squad car. The State then sought to publish the video for the court. The court explained the courtroom procedure.

> "THE COURT: [Defendant], what that means is the parties, your attorney and the State's attorney, have stipulated that there was a video taken by the squad car on this matter. That is evidence that the State has every right to introduce and that your attorney has the right to view, and that evidence will then be viewed by me because they are stipulating to it. We do not have video in this courtroom. What we do in this courtroom is I go back with your attorney and the State's attorney only. I view the video. There will be no questions asked because neither of the officers will be present. It is simply me watching the video. Neither of the attorneys can comment to me nor will I inquire of them. That will be done only in this courtroom on the record. All I do is watch the video. Do you understand that?
>
> [DEFENDANT]: Yes.
>
> THE COURT: And we will do that first.
>
> [ASSISTANT STATE'S ATTORNEY (ASA)]: Yes, Judge.
>
> THE COURT: The court will be in recess. The court will now watch the video.

[DEFENSE COUNSEL]: If I may, I also explained that to you, correct? And I also explained what Judge Carmody just told you about the video. I explained all of that to you.

[DEFENDANT]: Yes."

¶ 5   The trial court paused the proceedings to watch the video in chambers in the presence of defense counsel and the ASA. The court subsequently admitted the squad car video, which is contained in the record on appeal and has audio, into evidence.

¶ 6   Following arguments, the court found Lucas guilty of battery to Officer Haron, resisting arrest, unsafe driving, DUI, and negligent driving. In so finding, the court explicitly stated it relied on the video and Clancy's testimony. The court noted that the video showed Lucas's driving was "disturbing" and she was "belligerent" and admitted to drinking alcohol. The court further mentioned that Lucas's "general behavior" and Clancy's observations about Lucas, all indicated to the court that she was under the influence of alcohol.

¶ 7   The court later denied defendant's motion for a new trial and sentenced her to 24 months' conditional discharge.

¶ 8                                    Analysis

¶ 9   On appeal, Lucas contends that she was denied due process because she was not present for a critical stage of her proceeding: namely, when the trial court viewed the squad car video of the traffic stop in chambers at trial. Lucas argues that the video was key evidence against her and the court relied on it in finding her guilty. Had she been present, Lucas asserts, she would have been able to "sift the testimony" against her and aid in her defense. Lucas acknowledges she did

not preserve this issue but argues that it is reviewable under the second prong of the plain error doctrine.

¶ 10    The State responds that Lucas affirmatively waived this issue by acquiescing to the court viewing the video in chambers after the court explained the parties' stipulation and the courtroom procedure. The State also argues that defense counsel stipulated to the authenticity of the video and the viewing was not a critical stage of the proceedings because the court was merely viewing the video and did not inquire of anyone about it. Thus, according to the State, Lucas's presence would have been "useless," and any alleged error from her absence would be harmless. The State further points out that Lucas does not contend on appeal that the video should not have been admitted.

¶ 11    Generally, the United States and Illinois Constitutions afford criminal defendants the right to be present at all critical stages of the proceedings, from arraignment to sentencing. *People v. Lindsey*, 201 Ill. 2d 45, 55 (2002); U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 8. But this right is not absolute. *Lindsey*, 201 Ill. 2d at 56. Rather, " 'a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome *if [her] presence would contribute to the fairness of the procedure*.' (Emphasis added.)" *Id.* at 57 (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)).

¶ 12    Whether a defendant's absence affects the trial's fairness depends on an assessment of the whole record; analysis "turn[s] on the nature of the hearing from which the defendant has been excluded." *People v. Lofton*, 194 Ill. 2d 40, 66, 68 (2000). We are presented with a question of law that is reviewed *de novo*. See *People v. O'Quinn*, 339 Ill. App. 3d 347, 358 (2003).

¶ 13     We agree with the State that Lucas waived her due process claim. " 'Waiver is the intentional relinquishment of a known right[.]' " *People v. Dunlap*, 2013 IL App (4th) 110892, ¶ 9 (quoting *People v. Bowens*, 407 Ill. App. 3d 1094, 1098 (2011)). Defense counsel stipulated to the authenticity of the video, and the trial court explained to Lucas that it would have to view the video in chambers because the courtroom lacked the necessary video equipment to play the video in open court. The court explicitly stated that it was merely viewing the video, no questions would be asked, and neither attorney would be permitted to comment on the video. Lucas indicated that she understood, and defense counsel clarified on the record that an explanation had already been given Lucas "about the video," a statement with which she agreed.

¶ 14     On appeal, Lucas asserts for the first time that she was denied due process when the court viewed the video outside her presence. A defendant cannot acquiesce to the manner in which the trial court proceeds and later claim on appeal that the actions were error. *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004). "The rationale behind this well-established rule is that it would be manifestly unfair to allow a party a second trial upon the basis of error which that party injected into the proceedings." *Id.* Even admission of improper evidence cannot be contested on appeal after a party "procures, invites, or acquiesces in the admission of [the] evidence." *People v. Bush*, 214 Ill. 2d 318, 332 (2005).

¶ 15     Moreover, Lucas did not have the right to attend the video viewing in person as a "critical stage" of her trial. Her presence at the video viewing would not have contributed to her opportunity to defend herself. See *People v. Young*, 2013 IL App (4th) 120228, ¶¶ 21, 23 (viewing of video recordings not itself critical stage as presence would be "useless," as it would not contribute to opportunity of defendant to defend himself). Similarly, simply watching the

video with the attorneys present but forbidden from speaking does not rise to a critical stage. See *Id.* ¶ 25 ("Counsel's waiver is effective, of course, because it did not involve a waiver [of] a fundamental right.").

¶ 16    The trial court handled the situation—the courtroom did not have the equipment to watch the video evidence—appropriately, and ensured that Lucas fully understood and acquiesced to its viewing the video outside of her presence.

¶ 17    Having determined that Lucas affirmatively waived her claim, we need not address her contention regarding plain error. See *Dunlap*, 2013 IL App (4th) 110892 ¶ 12 (plain error does not apply to issues that have been affirmatively waived).

¶ 18    Affirmed.