2022 IL App (3d) 190635

Opinion filed August 24, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, Grundy County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0635 Circuit No. 18-CF-155 |
| | ) | |
| ERIC M. BARTELS, | ) ) | Honorable Lance R. Peterson, |
| Defendant-Appellant. | ) | Judge, Presiding |

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justice Hauptman concurred in the judgment and opinion.
Justice McDade specially concurred, with opinion.

**OPINION**

¶ 1      Defendant was charged with a number of offenses resulting from an incident at the Shell gas station in Morris, where defendant strangled and stabbed his girlfriend. He was found guilty following a bench trial of attempted first degree murder and two counts of aggravated domestic battery and sentenced to a 14-year term of imprisonment. He appealed. We affirm.

¶ 2                              I. BACKGROUND

¶ 3      Defendant Eric M. Bartels was arrested after an incident at the Shell station in Morris in which he strangled and stabbed his girlfriend, Kimberly Ready. He was charged by indictment

with armed violence (720 ILCS 5/33A-2(a) (West 2018)), attempted first degree murder (*id.* §§ 8-4(a), 9-1(a)(1)), two counts of aggravated domestic battery (*id.* § 12-3.3(a)), and unlawful restraint (*id.* § 10-3(a)). The armed violence and unlawful restraint charges were thereafter dismissed.

¶ 4        A bench trial took place. The State presented the following witnesses. Tamara Chamberlain, the manager of the Shell station in Princeton, testified regarding her interaction with Ready and defendant when they came into the gas station to make some purchases the day of the Morris incident. Ready was crying and upset and struggled to make the debit transaction. The station was equipped with video cameras and the video recordings from the interaction with Ready and defendant fairly and accurately depicted the interaction at the gas station.

¶ 5        Louis Sims, a commercial truck driver, testified. He had parked his semitractor trailer in the Shell station parking lot in Morris while he patronized the bank across the street. He saw defendant and Ready in the Shell parking lot, where he heard Ready say, "he's trying to kill me." When he observed defendant choking Ready, he intervened and pulled defendant off her. He viewed the video recordings from the Shell station in preparation for trial and expressed that they were fair and accurate depictions of the events at issue.

¶ 6        Terry Scholz, who was at the Morris Shell station to purchase gasoline, thought he heard Ready say, "he's going to kill me" as she exited the building, but he was not sure. He then saw Ready and defendant argue while seated in their car and noticed Ready try to exit the vehicle. She was screaming, "he's going to kill me" before defendant pulled her back into the car. Scholz saw defendant punching Ready and observed that he had one hand on her throat. It appeared defendant had something in his hand that was moving back and forth toward Ready's neck. The truck driver was helping her when Ready fled from the car. The video recordings of the parking lot accurately depicted the scene.

2

¶ 7    Nicholas Thomas, an off-duty Shell station employee who had stopped to fill up his Mountain Dew mug, heard screaming at the pumps and saw Ready's leg sticking out from the car. He told the clerk on duty to call 911. Ready ran toward him and he took her in the bathroom and helped her with her wounds. He retrieved the station's video recordings per the request of law enforcement. He reviewed them and stated they were a fair and accurate depiction of the events.

¶ 8    Joseph Cromwell, a Morris resident, testified that the Nest security camera at his house captured defendant speeding down the street in Ready's vehicle. He stated the video recording was a fair and accurate depiction.

¶ 9    Law enforcement personnel from the Morris Police Department testified as to their roles in the investigation. The doctor who treated Ready at the hospital testified regarding Ready's injuries.

¶ 10    Ready testified. She described her relationship with the defendant and the events leading up to the incident at issue. She explained defendant called her 72 times from the jail. She spoke to him on some calls and other calls he left voice messages for her.

¶ 11    The recordings of the calls from the jail and the video recordings from the gas stations were admitted into evidence.

¶ 12    Following testimony of the State's witnesses, the defense attorney recommended that the trial court view the video recordings and listen to the audio recordings in chambers and offered that the parties could return to court in the morning when the State would rest. The following morning, the trial court informed the parties that it had watched the video recordings and listened to the audio recordings. However, the court could not review two of the three video recordings from the Morris Shell station. The court then took a short recess to watch the two video recordings again in chambers using the defense attorney's laptop. When court was back in session, the State

3

rested. The defense offered a stipulation by agreement and rested. The trial court found defendant guilty of all three remaining charges: attempted first degree murder and two counts of aggravated domestic battery. It considered the jail phone calls to reflect consciousness of defendant's guilt and noted the phone calls reflected a textbook depiction of the cycle of abuse.

¶ 13    Defendant moved for a new trial, arguing he was not proven guilty beyond a reasonable doubt, his trial was not fair, he was denied due process and equal protection, the court allowed prejudicial testimony and evidence, and the court erred in denying his motion for judgment of acquittal, in denying his motion *in limine* to prevent admission of his prior bad acts of domestic violence and in granting the State's motion *in limine* to allow Ready to testify about prior bad acts of domestic violence defendant perpetrated on her. The trial court denied the motion for a new trial, finding in part that the evidence against defendant was overwhelming.

¶ 14    Defendant filed a second motion for a new trial, arguing that he was denied due process and equal protection when the trial court watched the video recordings and listened to the audio recordings in chambers and out of defendant's presence. A hearing took place on the motion, following which the trial court denied the motion. Sentencing took place and the trial court sentenced defendant to a 14-year term of imprisonment. He appealed.

¶ 15                                    II. ANALYSIS

¶ 16    Defendant argues the trial court violated his due process rights when the court viewed a thumb drive of admitted evidence outside his presence. The thumb drive included video recordings capturing the defendant and Ready at gas stations in Princeton and Morris, the latter of which also partially depicted the events in the parking lot when defendant attacked Ready. The thumb drive also included audio recordings of defendant's phone calls to Ready from the jail and voice messages he left for her.

¶ 17    A criminal defendant has a right to be present at all critical stages of the proceedings against him. U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 8. The United States Constitution provides: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. The Illinois Constitution of 1970 states that "[i]n criminal prosecutions, the accused shall have the right to appear and defend in person and by counsel." Ill. Const. 1970, art. I, § 8. The right to be present is an implied right under the federal constitution and an express right under the state constitution. *People v. Lindsey*, 201 Ill. 2d 45, 55 (2002). The right of presence under both documents is designed to protect a substantial right. *Id.* at 57.

¶ 18    The federal and state constitutions provide for limited circumstances where a violation of a defendant's right to be present amounts to a constitutional deprivation. *People v. Bean*, 137 Ill. 2d 65, 80 (1990). Federal due process is violated when a defendant's absence results in an unfair and unjust trial. *People v. Bull*, 185 Ill. 2d 179, 201 (1998). Due process is violated under the Illinois Constitution when a defendant's absence results in a denial of an underlying substantial right. *Id.* Although the constitutional language is framed differently, both documents provide that a defendant is entitled to a fair and just trial in which his substantial rights are protected. *Lindsey*, 201 Ill. 2d at 57.

¶ 19    A defendant has a right to be present whenever his presence impacts his ability to defend himself. *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (*per curiam*). The right to be present is not absolute and no rights are violated when defendant's " 'presence would be useless, or the benefit but a shadow.' " *People v. Lofton*, 194 Ill. 2d 40, 67 (2000) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 106-07 (1934)). "The question is not whether 'but for' the outcome of the proceeding the defendant would have avoided conviction but whether the defendant's presence at the proceeding would have contributed to his opportunity to defend himself against the

5

charges." *Id.* This court reviews *de novo* whether a defendant's due process rights have been violated. *People v. O'Quinn*, 339 Ill. App. 3d 347, 358 (2003).

¶ 20        We begin with a discussion about whether defendant waived his right to be present when the trial court viewed the video recordings and listened to the audio recordings alone in chambers. Defendant asserts that he could not waive a right about which he had no knowledge, and because the court failed to admonish him regarding his right to be present, his waiver could not be knowing and voluntary.

¶ 21        Waivers of constitutional rights must be knowing and voluntary. *People v. Reid*, 2014 IL App (3d) 130296, ¶ 11 (citing *People v. McClanahan*, 191 Ill. 2d 127, 137 (2000)). A defendant's waiver of his right to be present must be an intentional relinquishment or abandonment of a known right. *Id.* Defendant relies on *People v. Lucas*, 2019 IL App (1st) 160501, to support his claim that he did not knowingly and voluntarily waive his right to be present. *Lucas* involved a traffic stop and subsequent conviction for driving under the influence, as well as other offenses resulting from the stop. *Id.* ¶ 4. Because the courtroom was not equipped for viewing video recordings, the court's standard procedure was to watch the video recordings in chambers with counsel present, but without the defendant. *Id.* ¶ 5. The court explained the process to the defendant and defense counsel reiterated that he had also informed the defendant regarding the procedure. *Id.* The defendant stated she understood the procedure and there were no objections. *Id.* The trial court viewed the video recordings outside the defendant's presence and thereafter found the defendant guilty, relying in part on the squad car video evidence it viewed in chambers. *Id.* ¶ 7. The reviewing court found that the defendant was not informed that she had a right to be present when the court viewed the squad car videos. *Id.* ¶ 14. Because she was not aware of the right, she could not knowingly and voluntarily waive it. *Id.* The *Lucas* court concluded that the defendant's absence

6

impacted her ability to consider the evidence and aid in her defense, thus affecting the fairness of the trial and violating her rights to due process. *Id.*

¶ 22 In *Lofton*, 194 Ill. 2d at 66, on which defendant also relies, the reviewing court addressed the defendant's claim that his due process rights were violated when a section 115-10 hearing (725 ILCS 5/115-10 (West 1996)) took place in his absence. As in *Lucas*, substantive evidence was presented at the hearing where the child victim and her mother testified. *Lofton*, 194 Ill. 2d at 68-69. The reviewing court found defendant's absence negatively impacted his ability to defend himself. *Id.* at 72. The court stated that the defendant's absence was not cured by the presence of his counsel because counsel could not waive the defendant's right to be present. *Id.* at 71-73.

¶ 23 In reliance on *Lucas* and *Lofton*, defendant maintains his attorney could not waive his right to be present. The court in *People v. Young*, 2013 IL App (4th) 120228, reached the opposite conclusion. The *Young* court addressed the defendant's claim that his attorney could not waive his right to be present. *Id.* ¶ 22. On the State's suggestion during a section 115-10 hearing, and with the defense counsel's agreement, the trial court viewed the victims' recorded interviews in chambers at the court's "leisure." *Id.* ¶ 7. After watching the recordings in chambers, the trial court thereafter found the defendant guilty. *Id.* ¶ 16. The reviewing court rejected the defendant's argument that his right to be present could not be waived by counsel's affirmative acquiescence to the court's actions. *Id.* ¶ 22. The reviewing court reasoned that defendant's presence during the viewing of the tapes would not have contributed to his opportunity to defend himself. *Id.* ¶ 24. He had been present at the section 115-10 hearing and was aware of the evidence against him. *Id.* It was the section 115-10 hearing the court found to be a critical stage of the proceedings against the defendant. *Id.* The trial court's viewing of the interviews in chambers was not a vital or critical stage and thus defendant could affirmatively waive his presence. *Id.* ¶ 25. The court further found

that because the in-chamber viewing did not affect a fundamental right, counsel could also waive defendant's presence. *Id.* Defendant had appeared at all critical stages and was bound by his attorney's waiver of the right to be present when the court reviewed the interview DVDs. *Id.* ¶ 26.

¶ 24    The courts in *Lucas*, *Lofton* and *Young* considered more than the defendant's physical absence in determining whether any due process violations occurred. In considering whether the defendant's absence affected the trial's fairness, the analysis turns on the nature of the hearing. *Lucas*, 2019 IL App (1st) 160501, ¶ 13 (citing *Lofton*, 194 Ill. 2d at 68). Unlike the facts in *Lucas* and *Lofton*, in the instant case the presentation of evidence was not new, testimony was not presented and argument was not made. Defendant was aware of the evidence against him. The trial court was alone in chambers and merely watched the video recordings and listened to the audio recordings. These facts align with those in *Young*, where the court viewed evidence of which the defendant was aware and familiar. As in *Young*, the court examined evidence that had been presented through testimony for which the defendant was present. The *Young* court determined that because the in-chambers viewing was not a critical stage of the proceedings, defendant's attorney could waive his presence. *Young*, 2013 IL App (4th) 120228, ¶ 25. We, too, find the in-chambers viewing was not a critical stage of the process to which defendant's right to be present attached and thus, defense counsel could waive defendant's right. Defendant's presence in chambers would not have impacted his decision to testify or present his case as he knew all the evidence against him that was contained on the thumb drive.

¶ 25    Defendant asserts that his absence deprived him of the ability to gauge the trial court's reaction to the recordings, affecting his ability to determine whether to testify on his own behalf and thus negatively impacting a substantial right and affecting his right to a fair trial. We reject this argument. The defendant in *Bull*, 185 Ill. 2d at 201-02, asserted the same claim, arguing that

8

his absence during *voir dire* of one venireperson prevented him from gauging the juror's reaction to questioning. The reviewing court found the defendant's claim unavailing as he did not show he received a partial jury or unfair trial. *Id.* at 202-03. Defendant's claim here is also unavailing. The trial court stated that had it viewed the evidence in open court it would have stoically watched and listened such that defendant would not have observed any reaction. The trial court explained that had the video recordings been viewed and the audio recordings heard in the courtroom, "[t]here would not have been interaction" or "litigation," "examination," or "Cross Examination." The court stated: "It was just this Court absorbing evidence that was agreed to and fully reviewed by both sides." Without reason and contrary to the record, the special concurrence doubts the trial court's assurance that it would impartially watch and listen to the evidence. We take the trial court at its word.

¶ 26        Had defendant been present in chambers while the tapes were played, he would not have had an opportunity to participate in any fashion in the presentation of the evidence. Under these circumstances, defendant was not prevented from making a fully informed decision regarding his right to testify. We find defendant's absence did not prejudice him as his absence did not result in an unfair trial or a denial of his substantive rights. See *Lindsey*, 201 Ill. 2d at 57 (absence must prejudice defendant and where there are no negative consequences from defendant's physical absence there was no denial of his rights).

¶ 27        We are further convinced that defendant waived his right to be present because of the manner in which the in-chambers viewing was suggested. In *Young*, the State volunteered the in-chambers procedure, while in the instant case, defense counsel suggested it. Thus, counsel here did more than acquiesce in the procedure now complained about; counsel recommended it. We note that after the trial court reviewed the recordings, it informed the parties the following morning

that it was not able to access two of the video recordings. Defense counsel provided his laptop to the court to enable the court to watch the video recordings, which the court recessed to chambers to view. The defendant was also present during this exchange and did not object. We consider that defendant twice affirmatively waived his right to be present.

¶ 28    Lastly, we address and reject defendant's request that trial courts should admonish defendants regarding their right to be present prior to any waiver of the right. Certain admonishments are required by the trial court, including regarding the defendant's rights to counsel and to a jury. See Ill. S. Ct. R. 401 (eff. July 1, 1984); R. 402 (eff. July 1, 2012). The right to be present is afforded defendants so they can protect their other rights, such as the right to testify. *Lindsey*, 201 Ill. 2d at 57 (" '[The right to be present] is a lesser right the observance of which is a means to securing the substantial rights of a defendant.' " (quoting *Bean*, 137 Ill. 2d at 81)). It is those rights about which a defendant should be admonished. Requiring the court to admonish defendants regarding the right to be present does not advance the substantial other rights.

¶ 29    We do not believe the disposition in this case puts us "on our way down a slippery slope to a place we ought not want to be," as the special concurrence worries will occur. *Infra* ¶ 34. Defendant has not demonstrated that his right to testify, or any other substantial right, was violated because he was not present during the trial court's in-chambers examination of the evidence. We find defendant was not deprived of his constitutional right to be present when the trial court viewed the gas station video recordings and listened to the audio recordings of the phone calls defendant made from the jail to Ready. His claim of a due process violation fails.

¶ 30                                III. CONCLUSION

¶ 31    For the foregoing reasons, the judgment of the circuit court of Grundy County is affirmed.

¶ 32    Affirmed.

10

¶ 33    JUSTICE McDADE, specially concurring:

¶ 34    This is a special concurrence because I acknowledge that, despite some switching between cases involving trials and those addressing other critical stages of a criminal prosecution, the majority's decision is consistent with existing caselaw. Nonetheless I write separately to express my concern that we appear to be on our way down a slippery slope to a place we ought not want to be.

¶ 35    I disagree with the twin determinations, reached in reliance on the reasoning in *People v. Young*, 2013 IL App (4th) 120228, that

> "the in-chambers viewing [of trial evidence] was not a critical stage of the process to which defendant's right to be present attached, and thus, defense counsel could waive defendant's right. Defendant's presence in chambers would not have impacted his decision to testify or present his case, as he knew all the evidence against him that was contained on the thumb drive." *Supra* ¶ 24.

And, in reliance on Bull, 185 Ill. 2d at 201-03, the majority's conclusion that "[d]efendant[']s assert[ion] that his absence deprived him of the ability to gauge the trial court's reaction to the recordings, affecting his ability to determine whether to testify in his behalf and thus negatively impacting a substantial right and affecting his right to a fair trial"

> "is also unavailing. The trial court stated that had it viewed the evidence in open court, it would have stoically watched and listened such that defendant would not have observed any reaction. The trial court explained that had the video recordings been viewed and the audio recordings heard in the courtroom, '[t[here would not have been interaction,' or 'litigation,' 'examination' or 'Cross Examination.' The court

11

stated: 'It was just this Court absorbing evidence that was agreed to and fully reviewed by both sides.' " *Supra* ¶ 25.

¶ 36 I wonder how many steps it will take, *using this precise reasoning*, to conclude that, once a bit of evidence has been testified to by one witness in defendant's presence, defendant loses the "right" to be present if that same evidence, or a variant of it, is testified to by another witness. Apparently, the caselaw would require us to find that the subsequent testimony is no longer a "critical stage" because defendant was already aware of it.

¶ 37 And how many more steps will it take, again using the same reasoning, to decide that anything given to defendant in discovery is known to him and its presentation can no longer be deemed a critical stage? Therefore, there is no need for defendant to be present or represented when that evidence is presented.

¶ 38 And how many more steps, using this same reasoning, until we find if the evidence of defendant's guilt is "overwhelming," and there is nothing he or she can advance that can change the outcome, so the entire trial is no longer a critical stage and there is no right or need for defendant to either be present or to be represented by counsel? This, of course, also begs the very interesting question of who decides if the evidence is overwhelming.

¶ 39 These seemingly absurd but—as we can already see, increasingly possible—results flow, inexorably in my opinion, from two "errors." First, from a misunderstanding of where trials fit into "critical stage" theory. The United States Supreme Court has found that the trial, in its entirety— both the guilt and sentencing phases—is itself a critical stage of defendant's criminal prosecution. There is no constitutional support for the parsing of the trial into *ad hoc* subcritical stages. And the second error is a belief defendant's right to be present and to be represented by counsel is grounded in his ability to actually change the outcome. That is not correct. The right is rooted in defendant's

12

opportunity to confront his accusers and to formulate and present a defense. It is for defendant and his counsel, not us, to determine what constitutes that defense how it may be derived, and how it is best implemented.

¶ 40     Turning to the instant case, the parties were engaged in the guilt phase of defendant's trial—a uniformly recognized critical stage of his criminal prosecution. The evidence at issue consisted of video and audio tapes, which the trial court—the finder of fact—would be seeing and hearing for the first time. It is not clear to me why the court found it necessary to view this evidence in chambers rather than in open court, but it does not matter;[1] the issue of defendant's presence and his representation are easily resolved by bringing him and his counsel into chambers. Clearly this constitutes the presentation at defendant's *bench* trial of factual evidence to the finder of fact— a quintessential part of the trial and undeniably a critical stage of defendant's prosecution. But our opinion finds it *not* to be a critical stage, and it does so on two grounds, neither of which I believe to be valid. First, *defendant has already seen and heard the tapes*, so even though they are important and the trial court needs to see and hear them, there is neither a right nor a need for defendant and his attorney to be present while this evidence is presented to the court. And second, the trial judge has a subjective conviction that his face will remain so inscrutable while viewing the evidence that defendant could not possibly glean anything from it that would be helpful to his defense. Our opinion finds that significant and acceptable, without considering the possibility that the inscrutability itself might lead defendant or counsel to revise their strategy on some issue.

---

[1]I agree that defense counsel's role in actually proposing that the trial court handle it that way presents a procedural hurdle for defendant, but it, too, does not matter in terms of the point I am attempting to make.

13

¶ 41    I believe this decision is wrong at its core and that it undermines the most fundamental tenets of our criminal justice system and contributes to the incremental erosion of our foundational right to due process and a fair and open trial.

*People v. Bartels*, 2022 IL App (3d) 190635

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Grundy County, No. 18-CF-155; the Hon. Lance R. Peterson, Judge, presiding. |
| **Attorneys for Appellant:** | Kevin Sanborn, of Johnson Law Group LLC, of Bloomington, for appellant. |
| **Attorneys for Appellee:** | Jason Helland, State's Attorney, of Morris (Patrick Delfino, Thomas D. Arado, and Nicholas A. Atwood, of State's Attorneys Appellate Prosecutor's Office, for counsel), for the People. |